Filed 12/12/13  In re J.Z. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re J.Z., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>J.Z.,<br><br>        Defendant and Appellant. | E057107<br><br>(Super.Ct.No. INJ019619)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Ronald L. Johnson, Judge.  (Retired judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Cynthia D. Miller Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

1

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael T. Murphy, Sabrina Y. Lane-Erwin and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

J.Z. appeals from the juvenile court's denial of his motion to dismiss based on prosecutorial delay of less than four months in filing the juvenile delinquency petition. As discussed below, we conclude that the juvenile court did not abuse its discretion because it properly balanced the prejudice to J.Z. against the reasons for the delay and found no due process violation.

FACTS AND PROCEDURE

On November 2, 2011, a security guard saw J.Z. and another male "wandering around" a grocery store. The guard thought they looked suspicious. The guard saw J.Z. go to the beer isle and stuff an 18-pack of beer inside his sweater under his left arm. J.Z. walked out the front door of the store with the beer, but without paying for it. The guard testified at the jurisdictional hearing that, once J.Z. exited the store, the guard yelled for J.Z. to stop. J.Z. turned around to look at the guard and then attempted to run. The guard put his hands on J.Z.'s shoulders. J.Z. turned and threw his right elbow at the guard's body, but the guard blocked the elbow with his right arm. The guard continued to hold onto J.Z. J.Z. dropped the beer and continued to try to get away, spitting at the guard and trying to hit him. The guard and a co-worker were eventually able to put J.Z. onto the ground. They brought him inside the store and detained him in a back room until police arrived. On cross-examination, the security guard clarified that J.Z. dropped the beer after he elbowed the security guard in the arm, not before.

2

On February 28, 2012, the People filed a subsequent[1] petition under Welfare and Institutions Code section 602, alleging J.Z. committed robbery (Pen. Code, § 211).

On March 18, 2012, J.Z. became 18 years old.

On August 21, 2012, before the jurisdictional hearing began, defense counsel moved to dismiss the petition based in part on the fact that the incident took place on November 2, 2011, the petition was not filed until February 28, 2012, and the store's videotape of the incident had been destroyed after 90 days. The juvenile court heard from both sides and then denied the motion without prejudice, and without discussion. After hearing testimony from the security guard, the court found that J.Z. had committed robbery. The court then terminated J.Z.'s wardship. This appeal followed.

## DISCUSSION

*J.Z.'s Assertions of Error*

The security guard testified that J.Z. used force on the security guard before dropping the beer and in furtherance of the theft, thus making the crime robbery, rather than after dropping the beer and in a mere attempt to get away, which would have made the crime burglary. J.Z. argues the prosecution violated his right to due process because the prosecution's unjustified delay in filing the wardship petition resulted in the

---

[1] J.Z. has a long history of juvenile wardship petitions and adjudications, beginning in 2007 at age 13 when he threatened to shoot another student at school. J.Z. then brought a homemade knife to school at age 14, possessed spray paint, placed graffiti, defaced property, stole a bicycle and committed burglary (twice) at age 15, committed assault with a deadly weapon and unlawfully used force at age 16, and committed robbery (the current crime) and was found driving a vehicle that had just been carjacked at age 17. Defendant committed another offense as an adult while this matter was pending.

destruction of the videotape. The videotape was the only objective evidence as to whether J.Z. elbowed the security guard before or after dropping the beer. J.Z. argues the juvenile court abused its discretion in that it failed to engage in the required balancing test. Specifically, J.Z. asserts that he established prejudice from the delay, and the court then failed to require the prosecution to offer its reasons for the delay so the court could balance the two to determine whether J.Z. had been afforded due process.

*Applicable Law*

"[T]he right of due process . . . safeguard[s] a criminal defendant's interest in fair adjudication by preventing unjustified delays that weaken the defense through the dimming of memories, the death or disappearance of witnesses, and the loss or destruction of material physical evidence. [Citation.] [¶] 'A defendant seeking relief for undue delay in filing charges must first demonstrate resulting prejudice, such as by showing the loss of a material witness or other missing evidence, or fading memory caused by the lapse of time. [Citation.] Prejudice to a defendant from precharging delay is not presumed. [Citations.] In addition, although "under California law, negligent, as well as purposeful, delay in bringing charges may, when accompanied by a showing of prejudice, violate due process. . . . If the delay was merely negligent, a greater showing of prejudice would be required to establish a due process violation." [Citation.] If the defendant establishes prejudice, the prosecution may offer justification for the delay; the court considering a motion to dismiss then balances the harm to the defendant against the justification for the delay. [Citation.] But if the defendant fails to meet his or her burden of showing prejudice, there is no need to determine whether the delay was justified.

[Citations.]' . . . [¶] 'We review for abuse of discretion a trial court's ruling on a motion to dismiss for prejudicial prearrest delay [citation], and defer to any underlying factual findings if substantial evidence supports them [citation].' [Citation.] In evaluating the correctness of a trial court's denial of a defendant's speedy trial motion, we consider all evidence that was before the court at the time the trial court ruled on the motion. (*Ibid.*)" *People v. Jones* (2013) 57 Cal.4th 899, 921-922.)

*Analysis*

Here, J.Z. argues the trial court abused its discretion because it did not proceed to the second step and third steps, inquiring into the prosecution's justification for the delay, and then balancing the reasons for the delay against the prejudice to J.Z. This is because, J.Z. argues, the court wrongly failed to find prejudice to him based on the material nature of the video.[2]

The trial court did not abuse its discretion. The record contradicts J.Z.'s claim that it did not proceed to the second and third steps. At the hearing on J.Z.'s motion to dismiss, defense counsel addressed the first step in the analysis when it argued that J.Z. was prejudiced because counsel could not use the video of the event to attempt to contradict the security officer's testimony: "We did not receive a supplemental report, and unfortunately, no video was ever produced and no video was ever brought out. Because of the delay in the filing from November 2nd until February 28, the tape was

---

**2** Because the juvenile court went on to perform the entire three-step analysis, we need not address the arguments in J.Z.'s responsive brief that the first step requires a defendant to establish only that the lost evidence is material, not that it is exculpatory.

lost, which—what that means is that they only keep their tape for 30 days. This petition was filed—I mean that they keep it for three months, is what it's indicating. This was filed three-and-a-half months later. So defense counsel could not go down and check it out because the tape was gone. Because of that—the only objective evidence we had was the videotape, and we don't have it. I think that that was a detriment to my client because they waited so long to file the petition."

The court then allowed the People to explain the reasons for the delay, step two in the three-step analysis. The People explained: "This individual has 13 petitions. He picked up an adult case in the interim between this case being heard. He is already serving time on an adult case for which he was given probation and custody time in the adult jail. *This case is extremely serious, and the timing of everything seems as fast as it could be but for him continually picking up new arrests* and having to switch back and forth between the juvenile and adult system."

J.Z. became an adult after this last petition was filed, and so his adult case was not a factor in the delay. However, he appeared before the juvenile court on November 30, 2011, on a probation violation, which he admitted, and for which he received "eight days in the work program." He waived referral to probation and requested an immediate disposition. He again appeared before the juvenile court on January 31, 2012, after having been caught driving a car shortly after its owner was carjacked, and admitted to felony driving a vehicle without permission. (Veh. Code, § 10851, subd. (a).) Again he waived referral to probation and requested immediate disposition. These facts are the basis of the People's justification for the delay—that this robbery case was presumably

6

too serious for the People to "work in" a petition containing the robbery charge during these two very brief hearings on lesser matters. The gist of the People's argument was that it did not purposely delay the hearing on this serious matter, and that three and one-half months was not unreasonably long under the circumstances.

The juvenile court then allowed defense counsel to respond, after which it denied the motion to dismiss "without prejudice." J.Z.'s assertions to the contrary, it appears to us from this record that the juvenile court applied the balancing test after hearing arguments as to both prejudice to J.Z. and the People's reasons for the delay, even though it did not engage in the balancing process aloud. Further, the court's decision as a result of the balancing test was not an abuse of its discretion, given the relatively short duration of the delay, the seriousness of the charges, the absence of any indication that the delay was purposeful, and the absence of any indication that the videotape would have been helpful to J.Z.

### DISPOSITION

The juvenile court's ruling denying J.Z.'s motion to dismiss is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____
P. J.

We concur:

HOLLENHORST_____
J.

KING_____
J.

7